UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL HODGES** | **CIVIL ACTION** |
| **VERSUS** | **NO: 20-1456** |
| **THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, ET AL** | **SECTION: "S" (3)** |

ORDER AND REASONS

IT IS HEREBY ORDERED that plaintiff's **Motion for Preliminary Injunction Pursuant to Rule 65(a)** (Rec. Doc. 6) is **DENIED**.

BACKGROUND

Plaintiff was a student at the Louisiana State University School of Medicine in New Orleans ("LSU"), who was reported for erratic behavior by a research professor to the Dean of Students. The Dean of Students, observing the same erratic behavior, and considering that Hodges admitted taking outdated prescription medications and managing them himself, referred Hodges to the LSU Campus Assistance Program (CAP) for a determination of fitness for duty and a drug test. As a result of his CAP referral, Hodges was removed from any course work until he could be evaluated and found fit to return. Hodges agreed to permit any treating or examining physicians to report back to CAP with respect to his progress. CAP then referred Hodges for a drug test as well as an independent fitness-for-duty evaluation by Dr. Nicholas Pejic of Atlas Psychiatry. Dr. Pejic diagnosed Hodges with anxiety and depressive disorders, but found him fit

to return to school, subject to certain ongoing treatment recommendations. Those recommendations included that he continue seeing a psychiatrist and take his prescribed medications for depression and anxiety, that Hodges's father (a physician) was not to prescribe medication for him, and that Hodges should begin cognitive behavioral therapy.

Hodges signed a treatment plan with CAP, agreeing to continue psychiatric treatment, follow all psychiatrist recommendations, and to not obtain prescriptions for psychiatric medication from anyone except his psychiatrist. He also agreed to begin cognitive behavioral therapy and attend a minimum of ten sessions. He signed a continuation of enrollment contract, which acknowledged that he had been referred to CAP due to the school's concerns about his behavior, and that, as a result, "specific terms [would] be applied to [his] continuation of enrollment . . . to ensure [his] safety as well as the safety of others."[1] In the contract he agreed to (1) comply with the school's substance abuse policy; (2) cooperate with CAP in obtaining necessary evaluations, (3) authorize his doctors to disclose treatment information to CAP, and (4) follow his treatment plans. He further agreed that his continued enrollment at LSU was contingent upon successfully completing an approved treatment plan, and acknowledged that evidence of non-compliance with treatment plans or any failure to abide by the enrollment contract would be grounds for suspension or termination.

Hodges did not comply with the imposed requirements, including ultimately revoking the authorizations for his providers to share reports with LSU. As a result, on June 13, 2019, Hodges

---

[1] Rec. Doc. 19-5, LSUHSC Fitness for Duty/Drug Testing/Continuation of Employment/Enrollment Contract (6/27/18).

was expelled.

In the instant suit, filed on May 14, 2020, Hodges argues that he was expelled in violation of the ADA due to his alleged disability of major depressive disorder, generalized anxiety disorder, and social anxiety disorder. Plaintiff alleges that LSU committed disparate treatment discrimination and failed to provide him with an equal opportunity to participate when it required him to undergo random drug testing and seek medical treatment, which amounted to harassment based upon his disability. He also claims that he requested accommodations for his disability from LSU that it was obliged to provide under the ADA, but LSU failed to provide them.

Hodges filed the instant motion for a preliminary injunction against LSU and Chancellor Thomas C. Galligan in his official capacity, alleging violations of the ADA, the Rehabilitation Act, and the Patient Protection and Affordable Care Act, and asking that this court enter a declaratory judgment stating, <u>inter alia</u>, that defendants' actions, policies, procedures, and practices subjected Mr. Hodges to unlawful discrimination in violation of the ADA, and issuing an injunction ordering Galligan to reinstate Hodges to LSU. The motion was filed on June 19, 2020 and noticed for hearing on August 19, 2020.

In terms of damages, the complaint alleges that "[a]s a result of the Board's conduct. . . Hodges has had to enroll at a medical school in the Caribbean where his employment prospects are lower and his earning capacity is significantly diminished." Cmplt. ¶ 185. Accordingly, he seeks compensatory damages for worsening of his disability and attendant pain and suffering, decreased earning capacity, increased student loans and interest expenses, expenses and costs to

obtain an equivalent education in the Caribbean, expenses and costs for the drug test and unnecessary outpatient assessments, legal costs, costs to obtain alternative reports and assessments, invasion of privacy, damaged reputation, emotional distress, mental anguish, and humiliation.

LSU opposes the preliminary injunction, arguing that Hodges has not established a likelihood of success on the merits, or irreparable harm. Specifically, LSU contends that Hodges cannot succeed on the merits because it did not treat Hodges disparately, but rather treated him entirely according to policy as it would have done for any student. LSU also argues that despite the fact that it requested Hodges to specify the accommodations he sought, Hodges never provided any specific accommodation requests. Finally, LSU contends that Hodges' damages are compensable in money and thus he has not established that he will suffer irreparable harm if a preliminary injunction is not granted.

## DISCUSSION

A preliminary injunction is an extraordinary remedy that should only issue if the movant establishes:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

Byrum v. Landreth, 566 F.3d 442, 445 (5th Cir. 2009) (quoting Speaks v. Kruse, 445 F.3d 396, 399–400 (5th Cir. 2006). A preliminary injunction may only be granted if the movant has clearly carried the burden of persuasion on all four of the prerequisites. Mississippi Power & Light Co.

v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2013). Irreparable harm means "harm for which there is no adequate remedy at law," such as monetary damages. Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C., 710 F.3d 579, 585 (5th Cir.2013). A movant must demonstrate that "irreparable injury is likely in the absence of an injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The threatened injury must be "more than mere speculation." Janvey v. Alguire, 647 F.3d 585, 601 (5th Cir.2011).

In this case, Hodges argues that he will suffer irreparable harm if a preliminary injunction is not granted, because "without immediate injunctive relief, Mr. Hodges faces the prospect of being unable to re-enroll at LSU" even if successful on the merits, because any relief "would likely be two or three years away."[2] He also argues that he is now at the American University of the Caribbean, which is located on the island nation of Saint Martin and not accredited in the United States and has undeniable qualitative differences from LSU in terms of education, networks, and earning capacity, which constitute irreparable harm.[3]

Numerous cases addressing this issue have concluded that delays in education pending

---

[2] Rec. Doc. 6-1, Pltf's Memo in Supp., p. 21.

[3] Rec. Doc. 27, Pltf's Reply, p. 13.

5

resolution of disciplinary processes where reinstatement is sought can be compensated through monetary relief. See, e.g., Shah v. Univ. of Texas Sw. Med. Sch., 2014 WL 4105964, at *4 (N.D. Tex. Aug. 21, 2014). In Shah, plaintiff was a medical student at University of Texas Southwestern Medical School ("UT Southwestern") who had successfully completed the first two years of medical school and several third-year rotations. One of his professors for his second internal medicine rotation gave Shah the lowest grade possible for his history and physical examination skills, and the second lowest grade possible for his professionalism and interpersonal skills. Id. at *1. In evaluating him, the professor stated: "communication and misses innuendos or subtle actions," and that Shah was "resistant or defensive in accepting criticism.... Not always comfortable interacting with others." Id. Shah argued that the negative review was motivated by his disability, Attention Deficit Hyperactivity Disorder ("ADHD"), and his ethnicity. Id. The professor gave Shah a failing grade and filed a professionalism complaint with the Student Promotions Committee ("SPC"). Id.

     Subsequently, a second professor gave Shah a failing grade for "professionalism issues" and a third, Dr. Amit Shah (not to be confused with the plaintiff), wrote a letter to the SPC in support of his colleagues' assessments and recommending that Shah be removed from medical school. Id. As a result, pursuant to a school policy triggered by three professionalism admonishments, Shah was called before the SPC. Id. Shortly after the SPC meeting, Shah was informed that he was dismissed from UT Southwestern for lack of professionalism. Id.

     Shah sought a preliminary injunction requiring UT Southwestern to reinstate him as a medical student and to remove any notations of accusations, findings, or sanctions from his

transcript. Id. The district court denied the requested injunctive relief, concluding that he had not proved a substantial threat of irreparable injury based on his argument that further delay in reentering UT Southwestern would set him back in his studies and rotations and delay his ability to complete his medical training. Id. at *4. The court specifically found that "[i]njuries flowing from such delays can be compensated through monetary relief." Id. The court further noted that any injury caused by notations on his transcript of unprofessionalism and dismissal from medical school could be addressed by corrective relief in the final judgment mandating a revision to his transcript. Id. The court further found that Shah had failed to prove that any gap in his medical school record that might place him at a disadvantage compared to other medical students could not be compensated through monetary relief for any such disadvantage. Id.

This rationale is directly applicable to the situation of plaintiff herein. If successful, Hodges would be reinstated to LSU. His damages would result from a delay in the completion of his medical education, and as in Shah, Hodges has not demonstrated that any injury caused by the delay or attending circumstances cannot be compensated in money damages, and potentially a revision to his transcript. The fact that Hodges has elected to attend another university while his matter is pending does not change that result. Any additional funds expended to attend the Caribbean medical school, or diminution in his future earnings as a result of completing some course work there rather than at LSU (which the court notes has the additional defect of being purely speculative), are compensable in money damages in the event that Hodges succeeds on the merits of his claim.

Numerous courts have reached the same conclusion in similar cases involving delayed

education and potential reputational damage, finding that the delay was compensable and the reputational damage was compensable and/or speculative. See, e.g., Doe v. Princeton Univ., 2020 WL 2097991, at *7 (D.N.J. May 1, 2020) (if plaintiff prevails on the merits of his underlying claims and is reinstated to Princeton, he will have suffered a delay in his education, analogous to a suspension, which can be remedied through monetary compensation); Madej v. Yale Univ., 2020 WL 1614230, at *6–7 (D. Conn. Mar. 31, 2020) (academic withdrawal does not mean plaintiff will never be able to obtain his degree; rather, his ability to do so will be delayed, which can be remedied through monetary compensation; reputational harm assertions are "too speculative to warrant injunctive relief"); Doe v. Vassar Coll., 2019 WL 622291 2019 WL 6222918, at *6 (S.D.N.Y. Nov. 21, 2019) (finding no irreparable harm where plaintiff claimed he would "lose the ability to play college soccer as well as his ability to graduate with his class this year"); Roden v. Floyd, 2018 WL 6816162, at *5 (E.D. Mich. Nov. 13, 2018), report and recommendation adopted, 2018 WL 6815620 (E.D. Mich. Dec. 27, 2018) (if plaintiff ultimately prevails on the merits of his underlying claims and is reinstated, he will have suffered a delay in his education, but delays in education do not constitute irreparable harm); Montague v. Yale Univ., 2017 WL 4942772, at *3–4 (D. Conn. Mar. 8, 2017) (harm from the delay in completing education, not graduating with contemporaries, and possibility of decreased employment opportunities are quantifiable and can be adequately remedied by money damages); Knoch v. Univ. of Pittsburgh, 2016 WL 4570755, at *8–9 (W.D. Pa. Aug. 31, 2016) (any interruption of education and delay in entering the workforce due to suspension can adequately be compensated by monetary damages should plaintiff succeed on the merits of his claims; it is

speculative that plaintiff would lose any professional connections by virtue of his suspension); Howe v. Pennsylvania State Univ. – Harrisburg, 2016 WL 393717, at *6 (M.D. Pa. Feb. 2, 2016) appeal dismissed (Mar. 29, 2016) ("[T]he court finds that even if the plaintiff would experience a delay as a result of his suspension, this would not constitute irreparable harm which would not be compensated with monetary damages in the future, if warranted."); Pierre v. University of Dayton, 143 F. Supp. 3d 703, 714 (S.D. Ohio 2015) ("[C]ourts have also held that a suspension is not irreparable."); Caiola v. Saddlemire, 2013 WL 1310002, at *2 (D. Conn. Mar. 27, 2013) (rejecting plaintiff's claim that stigma of expulsion could interfere with his career as "speculative" and noting that "[i]n order to demonstrate that he will suffer irreparable injury, plaintiff must show that a monetary award will not adequately compensate him for his injuries") Mahmood v. Nat'l Bd. of Med. Examiners, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012) (collecting cases stating that delays in education services do not constitute irreparable harm); Oser v. Capital Univ. Law Sch., 2009 WL 2913919, at *11 (S.D. Ohio Sept. 8, 2009) (noting that plaintiff had "no general right to attend law school" and that he will not be irreparably harmed by "[a]ny delay in his degree conferral" if he should ultimately succeed on his claim); Marsh v. Delaware State Univ., 2006 WL 141680, at *6 (D. Del. Jan. 19, 2006) (delay in education does not amount to irreparable harm); Baer v. Nat'l Bd. of Med. Examiners, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) (inability to continue as a medical student without interruption is not a harm that is irreparable to Baer's potential medical career); Phillips v. Marsh, 687 F. 2d 620 (2d Cir. 1982) ("We can conceive of no irreparable harm that would accrue to [the plaintiff] in allowing her graduation to await the outcome of the trial on the merits; any damages to her from deferring her

career as a military officer in that period of time would surely be compensable by monetary damages."). As the foregoing collected cases establish, a delay for the length of time it would take to resolve this matter on the merits is compensable in money damages, as is any tarnishing of Hodges' medical degree due to his Caribbean course work. As well, the latter is speculative, further militating against a finding of irreparable harm. Finally, the court observes that Hodges' delay of nearly one year from his expulsion to file suit and over one year to file and notice for hearing his request for injunctive relief further undermines his argument that any injury he may have suffered is irreparable.

Because Hodges has failed to carry his burden of showing a substantial threat that he will suffer irreparable harm if a preliminary injunction is not granted, the court pretermits a consideration of his likelihood of success on the merits. See DFW Metro Line Servs. v. Sw. Bell Tel. Co., 901 F.2d 1267, 1269 (5th Cir.1990) (per curiam) (affirming denial of preliminary injunctive relief on ground that movant had failed to show irreparable injury, and pretermitting discussion of other three factors)). Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's **Motion for Preliminary Injunction Pursuant to Rule 65(a)** (Rec. Doc. 6) is **DENIED**.

New Orleans, Louisiana, this __25th__ day of August, 2020.

*[signature]*
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**